## Hutchinson *versus* McClure.

The knowledge by the debtor of his insolvency, and his intention, at the time of confessing a judgment to a *bonâ fide* debtor, to make an assignment, and his actual assignment afterwards, will not invalidate the judgment, by virtue of the proviso to the 4th section of the Act of 16th April, 1849, unless the judgment creditor participated in the wrongful intent of the debtor in giving it. The decision in Summer's Appeal, 4 *Harris* 169, &c., disapproved of.

ERROR to the Common Pleas of *Erie county*.

This was a feigned issue directed in April, 1852, by the Common Pleas of Erie county, between Monroe Hutchinson, as plaintiff, and John McClure, S. C. Marsh, and A. Freer, as defendants. It was directed to determine the right to a part of $4280.52

[Hutchinson *v.* McClure.]

raised by the sheriff of Erie county, out of certain personal property of Squire Hall, on execution against him, in favor of McClure and others. Hutchinson claimed $2817.15 of the money so made, as the trustee of the creditors generally of Hall, by virtue of *an assignment* made by the said Hall on the first day of September, A. D. 1851, to the said Hutchinson, in trust for all the creditors of Hall. Marsh and Freer claimed under execution on a judgment-bond given by Hall, and by McClure as surety of Hall, and dated 7th July, 1851. *John McClure,* jr., claimed a part of the money on an execution issued on a judgment entered on a bond in his favor executed by Hall, dated 4th of August, 1851, containing authority to confess judgment. On the 16th and 18th August, 1851, executions were issued on the judgments of Marsh and Freer and McClure, and were placed in the hands of the sheriff of said county, and levied on nearly the entire property of Hall, all of his property being *personal.*

The assignee claimed the money in preference to the executions, alleging that the judgments were confessed to *evade* the Act of the 17th of April, 1843, concerning preferences in assignments, and were *void* as *against* the assignee under and by force of the 4th section of the Act of the 16th of April, 1849, relating to assignments.

The jury were sworn on 27th April, 1852.

In the course of the trial, the defendants offered in evidence the deposition of Squire Hall, the debtor, taken in the suit of John McClure, jr., *v.* Squire Hall, jr., to the reading of which deposition the plaintiff, by his counsel, objected, because it was taken in a suit between other parties, and to which the said assignee was no party, and in which he had no opportunity of cross-examination. This objection the Court overruled, and permitted the deposition to be read.

Hall testified that when he gave the judgment-bond to McClure, he believed that he was able to pay his debts; and that he did not know of the intention to enter the judgments and have execution issued, till about an hour before the sheriff made the levy.

The Court instructed the jury, that to entitle the assignee to the money, they must find, not only that Hall, at the time he gave the judgments, *knew* that he *was insolvent,* but also that he *intended to make an assignment.*

Verdict was rendered for the defendant, and in May, 1852, the Court directed distribution.

The instruction of the Court, and the permitting the deposition to be read in evidence, were assigned as error.

*Marshall,* for plaintiff in error.—It was contended that the

[Hutchinson *v.* McClure.]

Court erred in so instructing the jury, and ought to have told the jury that if Hall, at the time of confessing the judgments, *knew* that he was insolvent, such knowledge was conclusive evidence that the judgments were given to evade the Act of 1843, and were void. That the Court required too much to be proved. That the intention of the debtor, at the time of confessing judgment, to make an assignment, was not necessary: Summer's Appeal, 4 *Harris* 169; *Proviso to Act of* 16*th April*, 1849.

*Church*, for defendant in error.—The jury have found that Hall did not know that he was insolvent; if so, he did not intend to make an assignment. The execution was adverse; not with the consent of Hall. If a subsequent assignment of itself destroys a former judgment, the judgment is within the power of the debtor alone, even though he did not intend to assign when the judgment was confessed: Blakey's Appeal, 7 *Barr* 449.

*Thompson*, also on part of defendant.

*Walker*, for plaintiff.—By the Act of 1849, the judgment was fraudulent, if Hall, the debtor, was insolvent when he executed the power to confess it; whether he knew that he was insolvent, or whether he then intended to make an assignment, was not material.

The proviso of the Act of 1849 was not repealed till the 4th May, 1852: *Acts of* 1852, p. 584. But the repeal was not material as respected this case, as it was tried before the repeal.

The opinion of the Court, filed Dec. 20, 1852, was delivered by

LEWIS, J.—This was an issue directed to the Common Pleas of Erie county, to try whether Monroe Hutchinson, assignee of Squire Hall, was entitled to priority over John McClure, Steward C. Marsh, and Alexander Freer, in the distribution of the fund raised by the sale of personal property of Hall, under executions in favor of the creditors last named.

On the 1st of August, 1846, Hall was indebted to McClure on a promissory note given for the purchase of a stock of goods at Cranesville; and on the 10th August, 1849, gave a single bill for the amount, with power to confess judgment. On the 8th December, 1848, he was indebted to McClure on another promissory note for goods at Girard, and on the 5th May, 1851, gave a single bill for the amount, payable within twenty days from date, with power to confess judgment. On the 4th August, 1851, both these debts were included in a judgment bond, and on the 18th August, 1851, judgment was entered on the bond and execution issued.

On the 7th of July, 1851, Hall gave Marsh and Freer a bond with power to confess judgment, for an indebtedness which arose

two years before, for goods purchased in New York. On this bond judgment was entered on the 16th of August, 1851, and execution issued.

By virtue of these two executions, the goods of Hall were seized and sold by the sheriff. The sale commenced on the 1st September, 1851. On that day, while the sheriff was actually selling the goods, Hall executed an assignment, for the benefit of creditors, to Hutchinson, the plaintiff. This assignment was not recorded until the 29th September, 1851, and the bond of the assignee was not approved until the 27th April, 1852. There was no evidence tending to show that the debts claimed by McClure, and Marsh and Freer, were not justly due, or that in obtaining their judgment bonds, or in afterwards entering judgment on them, they had any intention to evade the provisions of the Act of 1843, relative to assignments. It did not clearly appear that Hall, when he gave these judgment bonds respectively on the 7th July and 4th August, contemplated an assignment, or even knew that he was insolvent. But, conceding that he had such knowledge, and entertained, at the time, an intention to make an assignment, how is that to affect an honest creditor who had no knowledge of any such purpose, and had no participation in the intention to evade the Act of 1843?

In Worman et al. *v.* Wolfersberger's Executors (see 7 *Harris* 59), it was shown that, according to all the decisions upon statutes enacted to prevent frauds upon creditors, the party who obtained a security or a conveyance in good faith, was not affected unless he participated in the wrongful intent of the debtor in giving it; and it was declared that the doctrine in Summer's Appeal, 4 *Harris* 169, was a departure from the principles which had usually governed the Courts in the construction of statutes similar to the proviso in the Act of 1849; and that there was something so revolting to the most ordinary sense of justice in depriving any one of a vested right, a lien for a just debt, without any fault of his own, that it ought not to be done, except in obedience to the plain and imperative mandate of a power not to be resisted." Is there any such "plain and imperative mandate" in the Act of 1849? Far from it. Even the learned judge, who engrafted upon it the construction in question, admits, in his opinion, that the Act is "exceedingly obscure," and that there is but "a glimmering" of such "intent" in it: 4 *Harris* 174. And the legislative and executive departments, so far from admitting the existence of any such intent, within less than a year after the decision was pronounced, repealed the proviso upon which it was founded, and thus extinguished the *ignis fatuus* which had led the judicial mind astray. Although this repeal cannot operate, retrospectively, upon rights which had previously vested, the judgment of the other

[Hutchinson v. McClure.]

branches of government, in cases admitting of doubt, is certainly to be treated with respectful consideration.

The decision in Summer's Appeal was a departure from the great principle which requires that statutes in derogation of the common law shall receive a strict construction. It was pronounced in manifest forgetfulness of an uninterrupted current of authority upon the construction of similar clauses in statutes to prevent frauds upon creditors. It was an invasion, without legislative warrant, of the long-established right of the citizen, where he has not surrendered the dominion over his property to others, to conduct his affairs in his own way. It was a violation of a maxim of universal justice, which declares that no one shall suffer for another's fault. *Nemo punitur pro alieno delicto.* Its tendency is to produce uncertainty and litigation; and its result, if adhered to, would be to throw into confusion the plain business transactions of a community whose commercial enterprises prosper most when left to their own activity, intelligence, and vigilance. In overruling it we correct a plain mistake; we affirm, as a principle not to be denied, that the judicial power is not authorized to make new and inconvenient innovations upon the rights of the people, or to alter the law of the land upon a mere "glimmering" of legislative intent; and we replace ourselves upon ancient foundations, in accordance with the true doctrine of *stare decisis*, and in obedience to the authoritative voice of the law.

As the plaintiffs below failed to make out even a *primâ facie* case, the defendants were entitled to a positive direction in their favor. It follows that the error in admitting the deposition of Hall, even if a bill of exception had been sealed, would furnish no ground for reversing the judgment.

The judgment on the verdict and decree of distribution are affirmed.